UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MR & MRS. CRAB FRANCHISE, INC.

    Plaintiff

    vs.                        Case No.

MAIN STREET MEDIA 360, LLC,

    Defendant

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, MR. & MRS. CRAB FRANCHISE, INC. for its Complaint against Defendant MAIN STREET MEDIA 360, LLC ("MSM") alleges as follows:

## NATURE OF THE ACTION

1.    This is an action for damages for breach of contract, violations of Florida's Computer Abuse and Data Recovery Act, conversion, tortious interference with prospective business relationships, and violations of Florida Deceptive and Unfair Trade Practices Act, stemming from MSM's unilateral disabling of MR. & MRS. CRAB's website, and theft of valuable confidential electronic information, documents, passwords, and email list.

1

2.     MR. & MRS. CRAB is seeking damages as a result of MSM's intentional, wrongful, and malicious actions, which prevented MR. & MRS. CRAB from using, accessing, and controlling its own domain names, website, email, and related documents and information causing MR. & MRS. CRAB significant irreparable injury.

## PARTIES, JURISDICTION AND VENUE

3.     MR. & MRS. CRAB is a Florida corporation that at all times material was authorized to and did conduct business in Florida.  MR. & MRS. CRAB's principal place of business is located at 13714 Vancanza Dr., Venice, Florida, 34293.

4.     MR. & MRS. CRAB is a restaurant franchise with sixteen (16) locations that serve customers in sixteen (16) locations.

5.     MR. & MRS. CRAB markets its restaurants under its trademark "MR. AND MRS. CRAB" (the "Mark") and has done so since at least as early as 2016. The Mark and the goodwill it symbolize are critically important to MR. & MRS. CRAB's business and its reputation.

6.     MSM is a Florida Limited Liability Company that at all times material was authorized to and did conduct business in Florida.  MSM's principal place of business is located at 759 SW Federal Hwy, Suite 206, Stuart, Florida, 34994.

7.     Pursuant to 28 U.S.C. § 1331, this court has original jurisdiction because this action contains claims which arise under federal law.  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the non-federal claims because such claims form part of the same case & controversy.

8.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Middle District of Florida, Tampa Division, because MR. & MRS. CRAB's principal place of business is in this district and division, and because a substantial part of the events giving rise to the claims in this action occurred in this district and division.

9.     MR. & MRS. CRAB has retained the undersigned law firm and has agreed to pay it a reasonable fee for its services related to this action.

10.     All conditions precedent to this action have been performed, satisfied, excused, or waived.

<u>**FACTS COMMON TO ALL CAUSES OF ACTION**</u>

11.     Prior to September 2017, MR. & MRS. CRAB, through a nonparty company, created its domain (the "Domain") for MR. & MRS. CRAB's business purposes located at www.mrandmrscrabseafood.com hosted by the GoDaddy platform.  MR. & MRS. CRAB has also registered the following domains for each of its individual locations:                www.mrandmrscrabgandy.com;

www.mrandmrscrabkissimme.com;                www.mrandrscrabfowler.com;

www.mrandmrscrabkirkman.com;        www.mrandmrscrabpinellaspark.com;

www.mrandmrscrabbrandon.com.  These individual locations are referred to as

the "Franchisee Domains."

12.     The Domain was registered and hosted MR. & MRS. CRAB's website

on or about September 2017.  The Franchisee Domains redirect to the Domain in

order to provide a seamless experience to all MR. & MRS. CRAB's customers.

13.     MR. & MRS CRAB hired MSM in or around September 2017 to

maintain and service MR. & MRS. CRAB's information technology systems,

including domain, website, and emails.  At this time, MSM was given access to the

Domain in order to manage the domain and provide services to MR. & MRS.

CRAB.

14.     As part of its obligations to MR. & MRS. CRAB, MSM was in charge

of MR. & MRS. CRAB's equipment that handled communications, data, processes,

secured communications, operational and applications software, including online

ordering, social media, and other matters related to MR. & MRS. CRAB's

information technology, restaurant services, and security.

15. In or around August 2018, the Domain was transferred to MSM in order for MSM to further provide web services to MR. & MRS. CRAB. That access was transferred only so that MSM could provide services for MR. & MRS. CRAB's benefit.

16. The Domain, which hosted MR. & MRS. CRAB's website, allowed MR. & MRS. CRAB to transmit, via email, documents and other electronic information for its customers' and business use, and through which MR. & MRS. CRAB sent and received a significant amount of internal and external emails. These emails included communications to and from its customers, and reflect years of historical interaction between MR. & MRS. CRAB and its customers.

17. Through the Domain, MR. & MRS. CRAB employees were able to use email addresses associated with the MR. & MRS. CRAB name, bringing instant recognition of the company name.

18. Further, MR. & MRS. CRAB's Mark, domain address and logo appears on its business cards, email signatures, presentations to customers, and other uses.

19. Importantly, MR. & MRS. CRAB's customers were able to order food through the Domain to the various franchise locations. Through the course of the

COVID pandemic, the ability to order food from MR. & MRS. CRAB has been a critical component of MR. & MRS. CRAB's business, and any interruption to such online ordering capabilities seriously injures MR. & MRS. CRAB's business.

20.    MR. & MRS. CRAB and MSM had an oral contract for MSM to handle the Domain, the Franchise Domains, and MR. & MRS. CRAB's information technology (the "Contract").

21.    The Contract initially provided that MSM would create a new website and new Facebook account for each of its locations as they opened and maintain the website and Facebook page and maintain the email subscription list of nearly 100,000 customers (the "Customer Email List").

22.    MSM would include promotional advertisements, giveaways, and specials on the Facebook page.

23.    After six (6) locations opened, MR. & MRS. CRAB decided to consolidate the website into one single web address, namely the Domain site.

24.    Thereafter, MSM was only responsible for maintaining the Domain, creating a new Facebook page for each location, and maintaining the Customer Email List.

25.     In early 2021, MR. & MRS. CRAB decided to handle its own Facebook page and thus, MSM was only responsible for maintaining the Domain and Customer Email List, and creating two monthly promotions on Facebook.

26.     During and in the course of its performance of its agreement with MR. & MRS. CRAB, and at MR. & MRS. CRAB's direction, MSM maintained the Domain for MR. & MRS. CRAB's business purposes.  MR. & MRS. CRAB provided MSM with the Domain account information including the password and username to access the Domain so that MSM could maintain the Domain on behalf of MR. & MRS. CRAB.

27.     Without MR. & MRS. CRAB's approval or knowledge, MSM transferred the Domain and the Franchise Domains from the godaddy.com hosting platform to a different hosting platform.

28.     Without MR. & MRS. CRAB's approval, MSM changed MR. & MRS. CRAB's username, password, and associated email for the Domain site, thus, preventing MR. & MRS. CRAB from accessing their own Domain.

29.     At all times relevant, MR. & MRS. CRAB paid MSM for annual Domain renewal and for management services as noted above.  At all times

relevant, MR. & MRS. CRAB or its franchisees paid MSM for annual Franchise Domain renewal as well.

30.     MR. & MRS. CRAB and its franchisees each paid MSM a monthly fee per location to handle the Domain, Customer Email List, and social media as explained above.

31.     MR. & MRS. CRAB did not owe any outstanding debt to MSM during the entire relationship.

32.     On or about May 21, 2021, MR. & MRS. CRAB notified MSM that it would like to handle the Domain internally and asked MSM to provide it with the Domain information including the username and password to access its site and the Customer Email List.

33.     In response, MSM claimed that MSM owned the Domain and required MR. & MRS. CRAB to pay $10,000 for access to the Domain, website, and Customer Email List.  MSM had never previously claimed MR. & MRS. CRAB owed any money related to the Domain, website, or Customer Email List.

34.     MSM further claimed that four of the sixteen franchise locations owed past due money for the May 2021 invoice.

35.     MSM refused to provide MR. & MRS. CRAB with MR. & MRS. CRAB's information unless MR. & MRS. CRAB paid the allegedly overdue balance and $10,000 purchase price for the Domain.

36.     Not wanting to lose its valuable domain and access to its customers, and without any obligation to pay the incorrect amounts demanded by MSM, on or about June 1, 2021, MR. & MRS. CRAB and MSM agreed that MR. & MRS. CRAB would pay MSM the allegedly overdue balance for all four of the location and an additional $5,000 for the release of the Domain and the Customer Email List. However, MSM reneged on this agreement and refused to provide MR. & MRS. CRAB with the Domain information.

37.     On or about June 1, 2021, MSM shut down MR. & MRS. CRAB's website preventing MR. & MRS. CRAB from accessing any of MR. & MRS. CRAB's intellectual property, Customer Email List, and Domain.  MR. & MRS. CRAB's customers were also unable to access MR. & MRS. CRAB's website and order from any of their franchise locations.  MR. & MRS. CRAB was unable to access its point-of-sale system to accurately retain orders.

38.     MR. & MRS. CRAB derives substantial business from its online orders in its sixteen (16) locations throughout Florida.

39.     MR. & MRS. CRAB was not able to access its Domain, its Franchise Domains, or intellectual property because MSM refused to provide MR. & MRS. CRAB with access to MR. & MRS. CRAB's own information.

40.     MSM refuses to provide MR. & MRS. CRAB with access to MR. & MRS. CRAB's email accounts and Customer Email List.  Thus, MR. & MRS. CRAB has lost its entire Customer Email List consisting of over 100,000 customer contacts.

41.     MSM does not and never did own any of MR. & MRS. CRAB's intellectual property, including domain name, logo, brand, etc.

42.     To this day, MSM has not provided MR. & MRS. CRAB its Customer Email List.

43.     MR. & MRS. CRAB has been forced to begin anew with its intellectual property and information technology by creating a brand new domain, website, and email subscription list.

## COUNT I – BREACH OF CONTRACT

44.     MR. & MRS. CRAB incorporates by reference the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

45.     In September 2017, MR. & MRS. CRAB and MSM entered into the Contract for MSM to provide technology services to MR. & MRS. CRAB.

46.     Through June 1, 2021, MSM provided services to MR. & MRS. CRAB including the maintenance of the Domain, maintenance of the website, and management of the hosting of MR. & MRS. CRAB's email and other data, including MR. & MRS. CRAB's Customer Email List.

47.     MSM does not own any of the Domains or MR. & MRS. CRAB's intellectual property.  MSM does not own the Customer Email List.

48.     At all times material, MR. & MRS. CRAB performed all of the stipulations, conditions, and agreements stated in the Contract to be performed on its part at the time and manner specified.

49.     On May 21, 2021, MR. & MRS. CRAB sent a notice of termination to MSM formally advising MSM that MR. & MRS. CRAB intended to terminate the Contract and would like to obtain access to the Domain and its proprietary information to transfer it to a new provider.

50.     Pursuant to the terms and conditions of the Contract, MR. & MRS. CRAB could terminate the Contract at any time.

51.     MSM refused to turn over access to the Domain and MR. & MRS. CRAB's intellectual property.  MSM changed MR. & MRS. CRAB's passwords without MR. & MRS. CRAB's authorization, and moved the Domain from the godaddy.com server.

52.     MSM materially breached its obligation under the Contract by refusing to turn over MR. & MRS. CRAB's information and subsequently by shutting down its website.

53.     As a direct, proximate, and foreseeable result of MSM's material breach of its contractual obligation, MR. & MRS. CRAB has incurred, and will incur, damages for remedying MSM's material breach of its contractual obligations.

WHEREFORE, MR. & MRS. CRAB respectfully requests this Court enter judgment against MSM for damages, injunctive relief, and such other and further relief as the Court may deem proper.

## COUNT II – VIOLATION OF THE FLORIDA COMPUTER ABUSE AND DATA RECOVERY ACT (FLA. STAT. § 668.801 ET SEQ.)

54.     MR. & MRS. CRAB incorporates by reference the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

55.     MSM knowingly and with the intent to cause harm and loss to MR. & MRS. CRAB caused the transmission of a program, code, or command to a protected computer without authorization and, as a result of the transmission, caused harm or loss.

56.     MSM knowingly and with the intent to cause harm or loss to MR. & MRS. CRAB disabled the MR. & MRS. CRAB website.  This act caused harm or loss to MR. & MRS. CRAB.

57.     MSM knowingly withdrew the Domain following MR. & MRS. CRAB's request for information and access to the Domain and to transfer MR. & MRS. CRAB's website, MSM failed to provide passwords and access to MR. & MRS. CRAB.  MSM was unauthorized to withdraw the Domain and shut down MR. & MRS. CRAB's website.

58.     Specifically, MSM's access was only granted to MSM as an authorized independent contractor to maintain the Domain on behalf of MR. & MRS. CRAB.

59.     At all times material, MR. & MRS. CRAB maintained the power to grant, deny, or limit access to its Domain to third parties.

60. MSM was never authorized to completely disable the MR. & MRS. CRAB website, or to deprive MR. & MRS. CRAB access to the Domain, Customer Email List, or email and other data stored within the Domain.

61. MSM improperly accessed the Domain to prevent MR. & MRS. CRAB from accessing and using its intellectual property causing MR. & MRS. CRAB to lose several online orders each hour and allowing MSM to have proprietary knowledge and functionality that MSM did not have authorization to keep and prevent MR. & MRS. CRAB from using.

62. MSM's actions were intended to cause harm and loss to MR. & MRS. CRAB in that MSM would have access to the Domain and intellectual property and MR. & MRS. CRAB would not be able to access its own Domain or use its intellectual property requiring MR. & MRS. CRAB to create a new website, domain, and email account.

63. Based upon MSM's actions, MR. & MRS. CRAB has been damaged.

64. Pursuant to Section 668.804, Florida Statutes, MR. & MRS. CRAB is entitled to attorneys' fees and costs in pursuit of this action as the prevailing party.

WHEREFORE, MR. & MRS. CRAB respectfully requests this Court enter judgment against MSM for damages, injunctive relief, and such other and further relief as the Court may deem proper.

## COUNT III – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

65.     MR. & MRS. CRAB incorporates by reference the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

66.     MR. & MRS. CRAB has contractual and business relationships with its customers, pursuant to which MR. & MRS. CRAB has legal rights.

67.     At all times material, MSM knew of MR. & MRS. CRAB's contractual and business relationships with its customers.

68.     Through its wrongful conduct, including, without limitation, its unlawful refusal to turn over the passwords, thus locking MR. & MRS. CRAB out of its Domain, email system, and documents, MSM intentionally and without justification interfered with MSM's relationships with its customers.

69.     As a direct and proximate result of MSM's interference, MR. & MRS. CRAB has been damaged.

WHEREFORE, MR. & MRS. CRAB respectfully requests this Court enter judgment against MSM for damages, injunctive relief, and such other and further relief as the Court may deem proper.

## COUNT IV – CONVERSION

70.     MR. & MRS. CRAB incorporates by reference the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

71.     By refusing to return the passwords to the Domain and the business, thus hijacking the Domain and MR. & MRS. CRAB's systems and preventing their use by MR. & MRS. CRAB, MSM intentionally, wrongfully, and without authorization exercised dominion or authority over the passwords, to which MR. & MRS. CRAB had and continues to have a right, thus depriving MR. & MRS. CRAB of its property permanently or for an indefinite time.

72.     By refusing to return MR. & MRS. CRAB's Customer Email List, MSM intentionally, wrongfully, and without authorization exercised dominion or authority over the Customer Email List, to which MR. & MRS. CRAB had and continues to have a right, thus depriving MR. & MRS. CRAB of its property permanently or for an indefinite time.

73.     MR. & MRS. CRAB has demanded return of all of its property, and MSM has refused to return the property.

74.     As a result, MSM converted MR. & MRS. CRAB's property.

75.     MR. & MRS. CRAB has been damaged as a result of MSM's conversion.

WHEREFORE, MR. & MRS. CRAB respectfully requests this Court enter judgment against MSM for damages, injunctive relief, and such other and further relief as the Court may deem proper.

## COUNT V – VIOLATION OF THE FEDERAL ANTICYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d))

76.     MR. & MRS. CRAB incorporates by reference the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

77.     This is an action seeking damages for violations of the Federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

78.     MSM had a bad faith intent to profit from the Domain.

79.     As described above, MSM registered, trafficked in, and/or used the Domain, which is protected pursuant to 15 U.S.C. § 1125(d)(1)(A)(ii).

80.     MSM's above-described actions violated 15 U.S.C. § 1125(d).

81.     As a direct and proximate result of MSM's actions in violation of 15 U.S.C. § 1125(d), MR. & MRS. CRAB has been damaged.

WHEREFORE, MR. & MRS. CRAB respectfully requests this Court enter judgment against MSM for damages, including disgorgement of any profits made from the refusal to provide MR. & MRS. CRAB with its Domain information, and the transfer of the Domain, or at MR. & MRS. CRAB's election before final judgment, statutory damages pursuant to 15 U.S.C. § 1117(d) in the amount of $100,000 per Infringing Domain Name for violation of 15 U.S.C. § 1125(d), plus all applicable pre- and post-judgment interest, attorneys' fees, and costs, and such other and further relief as the Court may deem proper.

## COUNT VI – VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FLA. STAT. § 501.201 EQ SEQ.)

82.     MR. & MRS. CRAB incorporates by reference the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

83.     MSM has engaged in unfair and unconscionable practices by improperly accessing, for their own financial gain, the electronic, proprietary system and proprietary information presentation of MR. & MRS. CRAB.

18

84.     MR. & MRS. CRAB's legitimate business interests are protected under Chapter 501, Florida Statutes.

85.     MSM's unfair and unscrupulous activities have caused damage to MR. & MRS. CRAB.

86.     MR. & MRS. CRAB has been damaged by the unfair and deceptive actions and practices of MSM.

87.     MSM has utilized such deceptive actions in preventing MR. & MRS. CRAB to provide a service to its customers, all at the detriment of MR. & MRS. CRAB.

88.     The deceptive acts occurred while MR. & MRS. CRAB's customers were attempting to place online orders and MR. & MRS. CRAB's customers were prevented from placing online orders.

89.     Further, the deceptive acts occurred when MSM refused to provide MR. & MRS. CRAB with its own Customer Email List of over 100,000 customers.

90.     The deceptive acts by MSM are likely to mislead consumers acting reasonably in the circumstances, to the consumers' detriment.

91.     Upon information and belief, there is a causal connection between the loss of orders from MR. & MRS. CRAB's customers, and MSM's deceptive conduct.

92.     Pursuant to Section 501.2105, Florida Statutes, MR. & MRS. CRAB is entitled to recover its attorneys' fees and costs.

WHEREFORE, MR. & MRS. CRAB respectfully requests that this Court enter judgment for damages against MSM for, together with attorneys' fees, costs, pre- and post-judgment interest, and any other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Mr. & Mrs. Crab Franchise, Inc. demands a trial by jury.

DATED this 25th day of June, 2021.

         /s/ Woodrow H. Pollack
**WOODROW H. POLLACK**
Florida Bar No.: 26802
Primary E-Mail:
WPollack@shutts.com
Secondary E-Mail:
KChambers@shutts.com
**MELANIE B. SENOSIAIN**
Florida Bar No.:  118904
Primary E-Mail:
MSenosiain@shutts.com

Secondary E-Mail:
TMcDonald@shutts.com
**SHUTTS & BOWEN LLP**
4301 W. Boy Scout Boulevard, Suite 300
Tampa, Florida 33607
Telephone: (813) 229-8900
Facsimile: (813) 229-8901